**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

CHRISTOPHER PARSONS,

    Plaintiff,

v.                                                  Case No. 12-10907
                                                         Hon. Lawrence P. Zatkoff

THE AUTO CLUB GROUP,

    Defendant.
_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on August 28, 2013

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

This matter is before the Court on Defendant's Motion for Summary Judgment [dkt 11]. Plaintiff filed a response after the time period in which to do so had expired, and Defendant replied.[1] The Court finds that the facts and legal arguments are adequately presented in the parties' papers such that the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. Mich. L.R. 7.1(f)(2), it is hereby ORDERED that the Motion be resolved on the briefs submitted. For the following reasons, Defendant's Motion for Summary Judgment is GRANTED.

**II. BACKGROUND**

Plaintiff Christopher Parsons ("Plaintiff") was employed by Defendant The Auto Club Group ("ACG") during two separate time periods, most recently from July 2007 until his effective discharge date on August 8, 2011. This litigation involves Plaintiff's employment from the latter period.

---

[1] In finding that Defendant will not be unfairly prejudiced, and in the interests of justice, the Court will consider the merits of Plaintiff's untimely response to the instant Motion.

As of July 2007, Plaintiff's job title was Senior Training Specialist, a management-level position which focused on training ACG's life insurance agents at various locations throughout the Midwest. Plaintiff's primary duties entailed scheduling individual or group training sessions with life insurance agents, preparing the training programs, driving to the training sites, and conducting individual and or group training programs. Plaintiff was considered an "exempt" employee, which meant ACG expected him to work independently without extensive managerial oversight.

One location where Plaintiff held training classes was ACG's agent development center, located at ACG's headquarters in Dearborn, Michigan. There, the training sessions sometimes ran consecutively such that a late-night session on one day was followed by an early-morning session the next day. Plaintiff requested that ACG pay for overnight hotel stays in situations where this occurred. Tony Welsh ("Welsh"), ACG's Vice President of Field Operations, and one of Plaintiff's managers, approved the request, but such stays were only permitted if the training events finished late in the evening and started again early the following morning. Any other time, Plaintiff was expected to commute from his home in Shelby Township, Michigan.

Sometime in February 2011, during the course of their "typical everyday meetings," Plaintiff mentioned to Gary Dick ("Dick")—his immediate supervisor at ACG, and friend—that his "sleep apnea was coming back again."[2] Plaintiff discussed with Dick the problems he encountered having his health insurance carrier cover a corrective mouth piece. Plaintiff testified that although "there was nothing [Dick] could do about it[,]" he just wanted to "let him know," presumably due to their close relationship.[3]

---

[2] Plaintiff claims to have suffered from sleep apnea since at least 2007. Yet, he fails to submit to the Court any medical records or evidence corroborating such a diagnosis. In fact, when reviewing the records ACG attached to its motion, it appears that Plaintiff reported no problems with daytime fatigue or trouble staying awake while driving just months before his discharge.

[3] Plaintiff alleges that he again informed Dick of his sleep apnea during the "second-to-last week" in July 2011. Plaintiff informed Dick that he recently fell asleep driving and "ran off" the road, to which Dick allegedly replied, "you'd better get that checked."

In March 2011, personnel from ACG's finance department questioned the propriety of Plaintiff's mileage and hotel expenses during the previous months. The investigation was turned over to Brian Menard ("Menard"), ACG's Senior Corporate Auditor. Menard confirmed that Plaintiff had approval for limited overnight hotel stays, as described above. Yet, according to Menard, his review of Plaintiff's hotel expenses and hotel and employment building access entry records revealed that Plaintiff unnecessarily stayed at a hotel on multiple dates when his training sessions at ACG's headquarters ended early. Plaintiff attempts to dispute the alleged inappropriate hotel expenses only by vaguely stating during his deposition that Dick "knew every trip [he] took."

In late April or early May 2011, Menard contacted Plaintiff as part of the investigation to discuss the discrepancies. Menard allegedly left multiple voicemails and sent an email, all requesting that Plaintiff contact him. According to Plaintiff, he was out of the office "sick as hell" when Menard attempted to contact him and, as a result, returned Menard's telephone calls a few days later. Menard, however, disputes this. Menard testified that when he checked Plaintiff's employment records, such inquiry confirmed that Plaintiff was working on the days that Menard attempted to contact him.

Around the same time, ACG investigator Joseph Keller ("Keller")—part of ACG's Special Investigation Unit—also commenced review of Plaintiff's mileage and car rental expenses and his reported work hours. Regarding rental car expenses, Keller found nine occurrences of "inappropriate" use of rental cars. Plaintiff contrarily claims that Dick "approved all use" of rental cars.[4] Moreover, Keller analyzed Plaintiff's reported work hours vis-à-vis ACG's tracking tools—such as cell phone usage, building access entry records at Plaintiff's main branch, and log-on data from Plaintiff's work

---

[4] In his response brief, Plaintiff cites to certain pages of his deposition transcript to support this assertion. A close reading of the cited pages, however, lends no support to such an assertion. Plaintiff's testimony that "[Dick] told me I had to start renting a car because I was driving too much," is not the same as Dick "approv[ing] all use." In this instance, Plaintiff grossly misconstrues his own deposition testimony.

3

computer—to conclude that Plaintiff was compensated for approximately 30 days to date in 2011 without evidence of actually working.

ACG also engaged a contractor to conduct visual surveillance on Plaintiff for seven working days from July 14 through July 25, 2011. The surveillance team observed Plaintiff stopping at restaurants, napping in his car, and visiting cigar shops. When surveillance concluded, Plaintiff was found to have worked 28.5 hours over the course of seven days. Plaintiff does not appear to dispute this, but rather claims that his sleep apnea forced him to take naps during the day.

On August 2, 2011, Keller and Dick interviewed Plaintiff. Keller questioned Plaintiff about ACG's policies for meal and rental car reimbursement and Plaintiff's answers indicated that he knew little to nothing about those standards. Towards the end of the interview, Plaintiff stated that he suffered from sleep apnea and this was the reason he was observed napping. ACG suspended Plaintiff's employment with pay effective August 3, 2011.

Based on the findings of Menard and Keller, Welsh terminated Plaintiff's employment on August 8, 2011. Welsh testified that certain of Plaintiff's actions necessitated the termination: (1) Plaintiff violated the limited hotel privilege by incurring expenses on dates when training sessions did not end late; (2) Plaintiff abused mileage and rental car usage and, during the August 2, 2011, interview, admitted that he was not versed in the expense policies; (3) Plaintiff could not explain his whereabouts on various working days; and (4) Plaintiff lied to Menard during Menard's investigation into Plaintiff's hotel expense issues.

Plaintiff filed a one-count Complaint against ACG alleging that ACG failed to accommodate his sleep apnea (*i.e.*, his claimed disability). ACG now seeks summary judgment with respect to Plaintiff's claim.

### III. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[T]he plain language of Rule 56[] mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."). A party must support its assertions by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

The moving party bears the initial burden of demonstrating the absence of any genuine dispute as to a material fact, and all inferences should be made in favor of the nonmoving party. *Celotex*, 477 U.S. at 323. The moving party discharges its burden by "'showing'–that is, pointing out to the district court– that there is an absence of evidence to support the nonmoving party's case." *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (citing *Celotex*, 477 U.S. at 325)).

Once the moving party has met its initial burden, the burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "[T]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient [to defeat a motion

for summary judgment]; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## IV. ANALYSIS

Plaintiff asserts a failure to accommodate claim under the ADA. Plaintiff claims that he informed Dick of his sleep apnea in February and July 2011, and likewise informed Keller during the August 2, 2011, interview; that a reasonable accommodation "could have been leave of absence, use of accumulated vacation, or short-term disability;" and that ACG "failed to allow Plaintiff the reasonable accommodation of being fitted with a medical device to correct the sleep apnea, instead terminating [P]laintiff." Dkt. 1, ¶¶ 9, 12, 18, 20. The Court finds Plaintiff's allegations to be devoid of merit and grants summary judgment to ACG.

Under the ADA, employer discrimination includes situations where the employer fails to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . ." 42 U.S.C. § 12112(b)(5)(A). To establish a prima face case for failure to accommodate under the ADA, a plaintiff must typically show that: 1) he is disabled within the meaning of the Act; 2) he is otherwise qualified for the position, with or without reasonable accommodation; 3) his employer knew or had reason to know about his disability; 4) he requested an accommodation; and 5) the employer failed to provide the necessary accommodation." *Johnson v. Cleveland City School Dist.,* 443 F. App'x 974, 982–83 (6th Cir. 2011). A reasonable accommodation includes "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices . . . [or] other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9). Importantly, *the plaintiff* bears the initial burden of proposing an accommodation and showing that the accommodation is objectively reasonable." *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 870 (6th Cir. 2007) (emphasis added).

6

ACG contends that Plaintiff's claim fails because Plaintiff never requested an accommodation. In fact, ACG argues, Plaintiff only twice mentioned his sleep apnea to Dick "in passing as part of a friendly conversation," and his admitted purpose in doing so was not to seek "anything" from Dick. Further, Plaintiff made no issue of his claimed condition until the August 2, 2011, investigation interview with Dick and Keller, wherein Plaintiff first asserted that his sleep apnea caused him to fall asleep during working hours. As of this date, Plaintiff was in the process of being suspended for integrity violations and ACG asserts that it had no duty to excuse previous workplace misconduct simply because Plaintiff offered his disability as an "after-the-fact excuse."

In response, Plaintiff first argues that "Dick knew in February 2011 that [Plaintiff] had sleep apnea and needed an accommodation until [Plaintiff] could work things out with Blue Cross to have [it] pay the $1500 price of the [corrective mouth piece]." Dkt. 12, p. 9. Next, Plaintiff states "[Plaintiff] certainly informed [ACG] during the interview with . . . Keller in March 2011 that he needed an accommodation." *Id.* Plaintiff's brief directs the Court to certain pages of the interview transcript as support for this argument. Plaintiff's position, however, is flawed for several reasons.

First, Plaintiff's claim that his conversations with Dick in February and July 2011 constitute a request for reasonable accommodation under the ADA grossly misconstrues the record and relevant law. As noted above, Plaintiff carries the initial burden of proposing a reasonable accommodation. *See Kleiber*, 485 F.3d at 870. Yet, Plaintiff's response brief is plagued with conclusory statements, and the evidence before the Court reveals that Plaintiff failed to carry that burden. Rather, Plaintiff's statements to Dick in February and July 2011 about his claimed sleep apnea were made solely in the context of their "everyday" friendly conversations—not for the purpose of seeking Dick's advice or help to combat the issue. Plaintiff' deposition testimony only confirms as much:

>   Q.   Did you want [Dick] to do anything?

> A. No, I was just telling him.
>
> Q. Yeah, but as a result of telling [Dick], is there anything that you wanted [Dick] to do, anything he [Dick] could have done?
>
> A. Nothing he could have done. I was just letting him know I was having a problem.
>
> ***
>
> Q. Okay. But there wasn't anything that [Dick] could do about Blue Cross, right?
>
> A. I wasn't telling him because it was Blue Cross - - I wasn't - - I didn't expect him to do anything about Blue Cross. I just told him the sleep apnea was coming back again.
>
> ***
>
> Q. Did you expect [Dick] to do anything about that or . . .
>
> A. No, there was nothing he could do about it. I just told him, it was coming back and I was having trouble with it.

Dkt. 11, Ex. A, pp. 89, 137, 138. Thus, by his own account Plaintiff never requested that Dick—or, for that matter, ACG—provide any specific accommodation regarding his claimed disability. As the Sixth Circuit has made clear, employers are "not required to speculate as to the extent of the employee's disability or the employee's need or desire for an accommodation." *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1046–47 (6th Cir. 1998). Accordingly, no reasonable juror could find that Plaintiff requested reasonable accommodation under the ADA in either February or July 2011.

Even further, to the extent Plaintiff argues that he had no specific duty to ask for an accommodation because ACG knew or should have known that he was disabled, Plaintiff misinterprets the law in this circuit. Under Sixth Circuit precedent, if an employee never requests an accommodation, the employer's duty to engage in the interactive process is never triggered. *See, e.g.*, *Melange v. City of Center Line*, 482 F. App'x 81, 85 (6th Cir. 2012); *Lockard v. Gen. Motors Corp.*, 52 F. App'x 782, 788

(6th Cir. 2002). As such, Plaintiff's actions in February and July 2011 did not oblige ACG to engage in the interactive process or discuss potential reasonable accommodations.

Second, Plaintiff's assertion that he "certainly informed" Keller that he needed an accommodation during the August 2, 2011, interview is misplaced. While Plaintiff made such comments as, "I've gotten something wrong, I've got sleep apnea[,]" "I'm falling asleep all the time[,]" and "I've had to pull over in the cars and take naps[,]" he still failed to offer summary judgment evidence to the Court indicating that he, in fact, requested accommodations for the claimed sleep apnea from Keller or ACG at that interview.

Moreover, in response to ACG's position that it has no duty to provide an accommodation in the form of excusing past work misconduct, Plaintiff fails to not only distinguish the cases cited by ACG but also to address and refute the argument whatsoever. Courts have consistently explained—including in the cases cited by ACG—that a "second chance" or forgiveness of prior workplace misconduct otherwise warranting termination is not a "reasonable accommodation." *See, e.g.*, *Davila v. Qwest Corp.*, 113 F. App'x 849, 854 (10th Cir. 2004) ("[A]s many cases have recognized in various contexts, excusing workplace misconduct to provide a fresh start/second chance to an employee whose disability could be offered as an after-the-fact excuse is not a required accommodation under the ADA."); *Hill v. Kansas City Area Auth.*, 181 F.3d 981, 894 (8th Cir. 1999) (holding employee failed to make timely accommodation request when she "waited until after she committed the offense of twice sleeping on the job, a work rule violation she knew would mandate her discharge"); *Brookins v. Indianapolis Power and Light Co.*, 90 F.Supp.2d 993, 1007 (S.D. Ind. 2000) ("Since [a] reasonable accommodation is always prospective, an employer is not required to excuse past misconduct even if it is the result of the individual's disability.") (citation omitted). *See also Lottinger v. Shell Oil Co.*, 143 F.Supp.2d 743, 758 (S.D. Tex. 2001) ("Thus, the ADA does not insulate an employee from adverse action taken by an

9

employer because of misconduct in the workplace, even if his improper behavior is arguably attributable to an impairment.") (citations omitted).  The Court finds this line of cases persuasive and holds that, even assuming Plaintiff's statements made at the interview could be construed as requests for accommodation—which the Court has already rejected—ACG had no obligation to consider such requests when Plaintiff's misconduct, *i.e.*, integrity issues, was the basis of the investigative interview, suspension, and ultimate termination.  Plaintiff cannot now use the ADA to avoid accountability for his actions.

The Court addresses one last point before concluding.  The only "evidence" of Plaintiff actually *proposing* specific accommodations can be found in his Complaint and—albeit briefly—at his deposition.  *See* Dkt. 1, ¶ 20 ("The reasonable accommodation could have been leave of absence, use of accumulated vacation or short term disability."); Dkt. 11, Ex. A, p. 104 (A: By putting me on disability or putting me on vacation[.]).  These proposals, however, were offered by Plaintiff after commencement of the instant lawsuit.  Plaintiff presents to the Court no other evidence that these suggested accommodations were sought or requested while he was still employed.  In fact, Plaintiff testified that he never asked "for some personal time off on account" of his sleep apnea.  Dkt. 11, Ex. A, p. 103.  If the Court were to consider these "eleventh-hour" suggestions as satisfying Plaintiff's burden under the ADA to first request reasonable accommodation, the effects would be perverse—an employer, like ACG, would be required to provide reasonable accommodation to an employee without that employee ever proposing during the relevant employment relationship that his disability necessitates accommodations.  This Court is not inclined to adopt Plaintiff's position here.

In sum, the Court grants summary judgment to ACG as Plaintiff failed to submit evidence sufficient to create a genuine issue of material fact regarding his ADA accommodation claim.

## V. CONCLUSION

Accordingly, for the reasons set forth above, IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment [dkt 11] is GRANTED.

IT IS SO ORDERED.

s/Lawrence P. Zatkoff  
Hon. Lawrence P. Zatkoff  
U.S. District Judge

Dated: August 28, 2013